IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OMAR MOHAMMED KHALIFH, *et al*., | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Civil Action No. 05-CV-1189 (JR) |
| GEORGE W. BUSH, *et al*., | ) ) ) |
| Respondents. | ) ) |

**PETITIONER'S MEMORANDUM IN OPPOSITION TO RESPONDENTS'
MOTION TO STAY PROCEEDINGS PENDING RELATED
APPEALS AND FOR CONTINUED COORDINATION**

The Great Writ is the "fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290 (1969). The Writ goes to the underpinnings of Western political philosophy and jurisprudence; the Supreme Court of the United States has declared that "there is no higher duty" than to maintain the writ of habeas corpus unimpaired. *Johnson v. Avery*, 393 U.S. 483, 485 (1969). The Court has recently reaffirmed the significance of the Writ, recognizing that it may only be suspended in "Cases of Rebellion or Invasion." *Rasul v. Bush*, 124 U.S. 466, 124 S. Ct. 2686, 2692 (2004) (quoting U.S. Const., Art. I, § 9, cl. 2). To carry out its purpose, the Writ requires a process that provides a "swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). Yet, the Petitioner continues to be detained without charge, without access to counsel, and without any fair, due process at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). Counsel for Petitioner has not been permitted to acquire any information regarding the circumstances of arrest, the reasons why Petitioner is

considered an "enemy combatant," and the date of confinement at Guantánamo, which may have occurred in excess of three years ago.

Inasmuch as the Writ is predicated upon an equitable and speedy review of executive restraint, the Respondents' motion for stay seeks to expand state power at the expense of justice and liberty. A petition for the Writ that is subject to delay eviscerates the protections of habeas corpus as expressed in both the Constitution and in 28 U.S.C. § 2243. Respondents' motion to stay Petitioner's habeas proceedings is in stark contrast to both the grave importance and expeditious nature of the Writ. Their motion should be denied.

Alternatively, should this Court grant the Respondents' request for a stay of the Petitioner's claim for relief pending related appeals, Petitioner respectfully requests that it narrowly tailor the stay to require the Respondents to provide counsel for the Petitioner with a "factual return" within a reasonable time frame, to provide access to Petitioner's medical records, and to permit counsel to communicate with and visit with the Petitioner. Any stay should also incorporate the flexibility to allow for interim or emergency relief short of release should Respondents take action that would defeat the purpose of the Writ; for example, if the Respondents seek to move the Petitioner from Guantánamo to another United States facility or transfer custody of the Petitioner to another country.

I.  STATUS OF THE CASE

In *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 2698 (2004), the Supreme Court of the United States found it "clear" that federal district courts have jurisdiction to hear habeas corpus challenges brought by aliens in United States custody at Guantánamo challenging the legality of their detention and related claims. This habeas corpus petition was filed on June 14, 2005 on behalf of the Petitioner, Omar Mohammed Khalifh, a Libyan national, upon

information and belief, who has been held virtually incommunicado in military custody at Guantánamo, since being seized and detained by the United States for at least three years and subsequently labeled an "enemy combatant." The Petition asserts that Mr. Khalifh's incarceration is without basis, without any specific charge, without access to counsel and without being afforded any fair process by which he might challenge his detention as required by the United States Constitution, the laws and treaties of the United States, or customary international law.

On July 12, 2005, Respondents moved to stay proceedings in Petitioner's case as well as the cases of three other Guantánamo detainees. The Respondents unconvincingly argue against permitting Petitioner's case to move forward during pending resolution of all appeals in *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and *In re Guantánamo Detainee Cases*, 355 F. Supp.2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No. 05-5064 (D.C. Cir. Mar. 10, 2005).

These appeals will decide a conflict between the decisions in those cases – a conflict in which a judge has issued a strong ruling supporting the viability of Petitioner's claims in this case, while another has completely denied Guantánamo detainees any opportunity to challenge the legality of their continued detention by the federal government. On January 31, 2005, Senior Judge Joyce Hens Green ruled in *In re Guantánamo Detainee Cases* that procedural due process protections of the United States Constitution extend to aliens detained at Guantánamo Bay and that the Combatant Status Review Tribunal proceedings used by the military to confirm detainees' status as enemy combatants and justify their continued detention fails to satisfy those requirements. *See* 355 F. Supp.2d at 453-78. Judge Green found "[t]here can be no question that the Fifth Amendment right asserted by the Guantánamo detainees in this

3

litigation – the right not to be deprived of liberty without due process of law—is one of the most fundamental rights recognized by the U.S. Constitution" and that such fundamental constitutional rights apply at Guantánamo Bay, "the equivalent of a U.S. territory." *Id.* at 464. Judge Green also ruled that detainees have a claim under the Third Geneva Convention. *Id.* at 478-80. In so ruling, Judge Green's decision was contrary to an earlier ruling by Judge Richard J. Leon in which the court concluded that foreign nationals outside sovereign United States territory, including those in federal custody at Guantánamo, are without any cognizable constitutional, statutory, or international law protections, regardless of United States sovereignty over and control of the territory and the clear jurisdiction of the federal court to hear the habeas claims of those confined. *See Khalid v. Bush*, 355 F. Supp.2d at 323-28.

## II.   A STAY WOULD SIGNIFICANTLY DELAY FAIR ACCESS TO JUSTICE FOR THE PETITIONER AND IS UNNECESSARY, UNWARRANTED, AND WOULD DEFEAT THE PURPOSE OF THE GREAT WRIT

Resolution of the pending appeals of these cases is likely to take several months during which Petitioner will continue to languish in a federal prison on foreign soil in denial of the basic, fundamental rights that many of us take for granted. The United States Court of Appeals for the District of Columbia Circuit has scheduled these cases for oral argument in September 2005. *See* Order, *Boumediene v. Bush*, No. 05-5062 consolidated with No. 05-5063 (July 18, 2005) (per curiam); Order, *Al Odah v. United States*, No. 05-5064 (July 18, 2005) (per curiam). Moreover, it is likely that the decisions in those cases will be subject to further appeal before the Supreme Court of the United States, which would further delay Petitioner's ability to seek relief and counsels' ability to represent the Petitioner.

A.   **Inadequate Discovery Prevents Compliance With *Rasul***

The Supreme Court, in *Rasul*, held that "application of the habeas statute to persons detained at the base is consistent with the historical reach of the writ of habeas corpus." 124 S. Ct. at 2696. Federal district courts have authority to hear applications for habeas corpus by anyone claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States." *Id.* at 2692 (quoting 28 U.S.C. § 2241(a), (c)(3)). The Court noted that petitioners' allegations that they had never engaged in combat or terrorism against the United States, were under United States jurisdiction, were not charged with any wrongdoing and were held without counsel "*unquestionably* describe custody in violation of the Constitution or laws or treaties of the United States." *Id.* at 2698 n.5 (emphasis added).

In order to support these kinds of allegations, Petitioner's counsel must be afforded a full and fair discovery process. Without access to all information regarding Petitioner's combatant status, length and conditions of confinement, and previous availability of civil or military counsel, Petitioner's allegations may be construed by a court as unsubstantiated, leading to dismissal. *Rasul* certainly did not stand for the proposition that the Government should be excused from the basic requirement of simply collecting paperwork regarding the individuals it is detaining at Guantánamo and providing such information to counsel for Petitioner to allow a fair, substantive habeas proceeding. Moreover, even if *Khalid* is affirmed, *Rasul* still mandates that detainees' petitions be heard and decided on their individual merits. *Id.* at 2699. As long as Petitioner's counsel is not allowed (by court order or Respondents' delay) to examine documents that purportedly support the Petitioner's detention, the merits of the Petition and his defense cannot be fully developed. The practical effect of the stay sought will continue – for several months, if not longer – the Executive Branch's assertion and implementation of

5

unchecked power,[1] in direct violation of the Supreme Court's ruling nearly a year ago in *Rasul*. Simply put, a stay in this case would mean that more than four years of illegal imprisonment may have elapsed before Petitioner's counsel will even begin to learn the critical facts necessary to represent the Petitioner, and many additional months, if not a year or more, before the Court can address the merits of Petitioner's claims and begin to grant relief.

### B.    Judicial Efficiency is Not a Sufficient Reason for Stay in This Case

Respondents submit that allowing the proceeding to go forward prior to appellate resolution of "core issues" would be inefficient and a waste of judicial resources. Were the matter before the court one involving a class action seeking damages, the argument for judicial economy might be compelling. The subject at issue, however, is the legality of the Petitioner's ongoing confinement in a United States military prison thousands of miles from home, with the inability to communicate with those outside its walls, including his family, and with continuing, troubling allegations of prisoner abuse and highly questionable practices involving foreign detainees in federal custody as detailed in the Petition. Any nominal efficiency value cannot trump these fundamental issues.

### C.    Respondents' Claims that Providing the "Factual Return" is Unduly Burdensome is Without Merit

A document of critical importance in this matter is the record compiled by the Combatant Status Review Tribunal ("CSRT") that purportedly provides the factual basis for the

---

[1] No change in policy or practice appears to be forthcoming from the Executive Branch, regardless of serious concerns expressed by legislators in both parties. In fact, the *Washington Post* has reported that "[t]he Bush Administration in recent days has been lobbying to block legislation supported by Republican senators that would bar the U.S. military from engaging in 'cruel, inhumane or degrading treatment' of detainees, from hiding prisoners from the Red Cross, and from using interrogation methods not authorized by a new Army field manual." *See* Josh White & R. Jeffrey Smith, *White House Aims to Block Legislation on Detainees*, Wash. Post, July 23, 2004, at A1. According to the article, the Administration's position is that such legislation would usurp the President's authority and has led it to threaten veto of a $442 billion defense bill if such a provision is included. *See id.*

detention of each individual in custody at Guantánamo and his or her designation as an "enemy combatant." This record is known as the "factual return." Expeditious access to this document by counsel for the Petitioner is essential to the effective representation of their client.

The Secretary of Defense is authorized to detain anyone the President has "reason to believe" is, among other categories, a member of al-Qaeda, a person who has aided or abetted terrorism against the United States, or someone who has knowingly harbored a terrorist. *See Order on Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism*, Nov. 13, 2001, 66 Fed. Reg. 57,833 (2000). In supporting Petitioner's claims of illegal confinement, it will be crucial to investigate if the President did, in fact, have "reason to believe" that Petitioner was a person subject to detention under the Order. Petitioner's assertion that he is not such a person cannot be fully supported without discovery of the factual returns.

Respondents argue that providing the factual return to counsel for Petitioner in this case while appeals of other Guantánamo detainees are pending, is contrary to judicial economy given that there is some possibility that providing this document, as well as other discovery, may ultimately be unnecessary depending on the D.C. Circuit's ruling. *See* Respondents' Motion at 8-12. They cite an "immense logistical burden" to process the return. *Id.* at 12. As discussed above, the value of efficiency to the government in not producing evidence in this case, or avoiding the expenditure of judicial time, must be viewed as secondary to fulfilling the purpose of the Writ of Habeas Corpus and allowing Petitioner to challenge the basis for his detention without further delay. Moreover, courts have repeatedly found that conclusory objections that document production is overly burdensome, such as that made by the Respondents, are insufficient to warrant a limiting of discovery. *See, e.g., Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002). When limiting production of documents, the court "should

balance the need for discovery against the burden imposed on the person ordered to produce the documents." *United States v. Network Software Assoc.*, 217 F.R.D. 240, 246 (D.D.C. 2003) (quoting *Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 452 (D.D.C. 2002)).

Under the circumstances, it seems very little to require Respondents to produce, in an expedited fashion, the document concerning the Petitioner that purportedly forms the basis for his continued detention. That the review and photocopying of a return "that can range from dozens to hundreds of pages" places a severe burden on the federal government is ridiculous on its face. Were this an ordinary civil case, a court would not hesitate to permit far more extensive discovery, potentially requiring a party to produce thousands of pages of documents that might need to be closely reviewed for attorney-client privileged information, work-product protected material, trade secrets, or other protected information. In fact, Respondents concede that they have been ordered to submit factual returns in many cases that are otherwise stayed. *See* Respondents' Motion at 12-13. Counsel for Petitioners do not object to providing Respondents with a reasonable amount of time to provide the information, though this process should begin without delay and take no longer than ninety days.

**D.    Respondents' Claim that Withholding Information from Counsel Necessary for Effective Representation is Necessary to Protect Classified Documents is Similarly Without Merit**

Respondents also cite concerns over the potential for inadvertent disclosure of classified information as a basis for not providing the factual return or other discovery. These concerns were addressed, however, by this Court's protective order that prohibits the disclosure of any classified information to any of the petitioners in these habeas cases. *See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba*, 344 F. Supp.2d 174, 180 (D.D.C. 2004) at ¶ 30.

8

The protective order outlines procedures for access to classified and protected information that counsel needs to develop Petitioner's case. It requires the disclosure of all relevant classified information to the petitioners' counsel who have the appropriate security clearances. *Id.* at 178-82. The clearance process is controlled by the government, and presumably counsel must pass the same background checks to which any other applicant would be subjected. Given the Protective Order and Respondents' own clearance protocols, Respondents' concern about giving counsel access to classified information is not based on security issues but is instead a stalling tactic. The protective order strikes the appropriate balance between the public interest in protecting classified information and the Petitioner's rights to counsel and due process. As Judge Green recognized, while counsel may not share such information with their clients, "they at least have the opportunity to examine all evidence relied upon by the government in making an 'enemy combatant' status determination and to investigate and ensure the accuracy, reliability and relevance of that evidence." *In re Guantánamo Detainee Cases*, 355 F. Supp.2d at 471.

Respondents state accurately that even if counsel had access to factual returns, they would not be able to share classified information with petitioners. *See* Respondents' Motion at 11 (citing Protective Order ¶ 30). Nevertheless, to fulfill the obligations and duties of representation, counsel must have full access to information regarding Petitioner. Factual returns are necessary in assessing the government's determination of Petitioner as an enemy combatant, and other elements important to developing the merits of the petition for a writ of habeas corpus. *See* Respondents' Motion at 11 n.7.

Finally, Respondents state that they have no objection to counsel meeting with detainees, *see* Respondents' Motion at 11, but without access to factual returns as part of a full

9

and fair discovery process, these meetings would amount to little more than visits by representatives of the Red Cross.

### III. ANY STAY SHOULD BE NARROWLY TAILORED TO FAIRLY BALANCE DUE PROCESS WITH JUDICIAL EFFICIENCY

Should this Court grant the Respondents' request for a stay of the Petitioner's claim for relief pending related appeals, Petitioner respectfully requests that it narrowly tailor the stay to fairly balance the due process with the judicial efficiency and other values expressed by the Respondents. Petitioner respectfully urges this Court to limit any stay in the following respects:

(1) Respondents should be required to provide counsel for Petitioner with a factual return within ninety (90) days. Should Counsel for Petitioners have not yet received the necessary security clearance,[2] Respondents should be required to provide an unclassified version of the factual return. As Respondents admit, the government prepares classified and public versions of the factual return as a matter of practice. *See* Respondents' Motion at 12.

(2) Respondents should be required to provide counsel for Petitioner with any medical records in its possession with respect to the Petitioner. Considering the ongoing allegations and reports of mistreatment of foreign detainees in federal custody, such records are imperative and should be produced without delay.

(3) Counsel for Petitioner should be permitted to communicate with and visit with the Petitioner pursuant to the Amended Protective Order and Procedures for Counsel Access to

---

[2] Counsel for Petitioner Edmond Burke submitted via first class mail an application for the necessary security clearance on July 2, 2005. Counsel for Petitioner Cary Silverman submitted such an application via Federal Express on July 20, 2005. Counsel for Petitioner Carlos E. Provencio is in the process of preparing the application for submission without delay.

10

Detainees at the United States Naval Base in Guantánamo Bay, Cuba entered by Judge Green on November 8, 2004.

(4) Any stay should incorporate the flexibility to allow for interim or emergency relief short of release.  This limitation on the stay would permit Petitioner to take any necessary judicial action should Respondents take action that would defeat the purpose of the Writ.  For example, Petitioners have filed a Motion for Temporary Restraining Order and Preliminary Injunction concurrently with this Response to require Respondents to provide it with thirty (30) days advance notice should it intend to move the Petitioner from Guantánamo to another United States facility or transfer custody of the Petitioner to another country.  Should counsel for Petitioner learn of this or a similar action on the part of Respondents, any stay should permit them to seek appropriate relief from this Court.

Moreover, should the Court grant a general stay on discovery pending resolution of certain appeals, it should order Respondents to preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at Guantánamo and all records relating to the Petitioner.  This will ensure that Petitioner is not prejudiced by the loss or destruction of documents related to his Petition for relief when the stay is lifted and discovery resumes.  Such relief is firmly within the discretion of the district court and will inflict no harm or prejudice upon the Respondents.  *See Pueblo v. Laguna v. United States*, 60 Fed. Cl. 133, 138 n.8 (Fed. Cl. 2004) ("A document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery.") (citing *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994)).

11

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Respondents' Motion to Stay Proceedings Pending Related Appeals be DENIED. Alternatively, should the Court grant a stay, Petitioner urges the Court to narrowly tailor the stay to protect fundamental due process values and the public interest as delineated above.

Dated:     July 25, 2005              Respectfully submitted,

                                      Counsel for Petitioner:


                                      /s/ Edmund Burke
                                      Edmund Burke
                                      BURKE MCPHEETERS BORDNER & ESTES
                                      737 Bishop Street, Suite 3100
                                      Honolulu, Hawaii  96813
                                      Tel: (808) 523-9833
                                      Fax: (808) 528-1656

Dated:     July 25, 2005


                                      /s/ Cary Silverman
                                      Carlos E. Provencio (D.C. Bar No. 461227)
                                      Cary Silverman (D.C. Bar No. 473658)
                                      SHOOK, HARDY & BACON L.L.P.
                                      600 14th Street NW, Suite 800
                                      Washington, D.C.  20005-2004
                                      Tel: (202) 783-8400
                                      Fax:  (202) 783-4211


                                      Of Counsel for Petitioner:

                                      Barbara Olshansky
                                      CENTER FOR CONSTITUTIONAL RIGHTS
                                      666 Broadway, 7th Floor
                                      New York, New York 10012
                                      Tel: (212) 614-6439
                                      Fax: (212) 614-6499