UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Omar ABU ALI and Faten ABU ALI,<br>as Next Friends of<br>Ahmed ABU ALI,<br>   presently detained in Saudi Arabia, his<br>   residence and that of his Next Friends is<br>   3245 Rio Drive, Apt. 1015<br>   Falls Church, VA 22041<br>       Petitioners<br><br>v.<br><br>John ASHCROFT, Attorney General of the<br>   United States;<br>Robert S. MUELLER, III, Director of the<br>   Federal Bureau of Investigation;<br>Luke KULIGOSKI, Special Agent, Federal<br>   Bureau of Investigation;<br>Other Special Agents of the FBI to be<br>   Identified and Named;<br>Thomas RIDGE, Secretary of the<br>   Department of Homeland Security; and<br>Colin POWELL, United States Secretary<br>   of State,<br>       Respondents | Civil Action No. 1:04-cv-01258 JDB<br><br>Judge John D. Bates<br><br>PETITION FOR<br>HABEAS CORPUS |

AFFIDAVIT OF **BRIAN EVANS**

I, **Brian Evans**, hereby make the following declaration with respect to the above-captioned case:

I am the Saudi Arabia, Bahrain, and Oman Country Specialist for Amnesty International USA (AIUSA). I have a Master's Degree in Middle East Studies from the University of Texas at Austin. In my AIUSA capacity I am charged with monitoring the human rights situation in Saudi Arabia, Bahrain and Oman. I monitor, assist with, and respond to U.S. media coverage of human rights issues in these countries. I interview victims and witnesses of human rights violations in these countries when they are here in the U.S., and testify, or prepare testimony for AIUSA representatives to U.S. government agencies or officials concerned with human rights issues in these countries.

1

I was first contacted by the family of Ahmed Abu Ali by email in August 2003. They were concerned for his safety both because of Saudi Arabia's reputation for torturing or otherwise abusing detainees, and because of a perceived lack of interest in protecting his rights on the part of U.S. consular officials. Amnesty International has written to U.S. and Saudi Arabian officials seeking clarification of the reasons for Ahmed Abu Ali's detention and seeking assurances that he will not be mistreated, and AIUSA has mobilized its activist members to write these same authorities seeking the same information.

Responses from U.S. officials have been limited to general assurances that Ahmed Abu Ali's rights will be protected; the Privacy Act has been cited as reason for not disclosing more specific information about Ahmed Abu Ali's detention, or any U.S. role in his detention, interrogation, or in protecting his rights. It is not clear that Mr. Abu Ali has ever been given the right to waive his rights under the Privacy Act.

As an expert on human rights practices in Saudi Arabia, I submit this affidavit to emphasize the Ahmed Abu Ali remains seriously at risk as long as he remains in detention in Saudi Arabia.

The Saudi Arabian criminal justice system is fundamentally lacking in the basics of due process. The legal protections that do exist in principle in Saudi Arabia, most of which were only enacted in 2002, can be and are easily ignored in high profile cases. In practice, there is no right to a defense attorney or a public trial, or indeed a trial of any kind. Saudi Arabian authorities continue to hold detainees indefinitely without charge or trial. For example, Sa'd ibn Sa'id Al Zu'air has been detained since July of 2002, in connection with his efforts to campaign for the release of his father, a prominent critic of the Saudi Arabian government. Since July 2002 no one, not even his family, has received any information about his status, whereabouts or health. He may or may not have been tried, convicted and sentenced on unknown charges. In this case, as in many others, the legal reforms of 2002 have proved meaningless. (see *Saudi Arabia: Justice must be seen to be done*, AI Index: MDE 23/010/2004, 1 August 2004) – all Amnesty International documents, including Annual Report entries, are available on the Amnesty International website at: http://web.amnesty.org/library/eng-sau/index )

In the trials that do take place, confessions are considered of paramount importance, and the use of torture or other forms of ill-treatment to extract confessions is commonplace. A lack of judicial supervision over detaining authorities allows torture to take place with impunity.

Citizens of Western countries are not safe from these abuses. In August, 2003, five British and one Canadian national were released from Saudi Arabian custody following a royal pardon that was obtained by the personal intervention of British Prime Minister Tony Blair. They had been convicted of a series of bombings of Western country nationals that took place in November 2000. Two of the men, William Sampson (Canadian) and Alexander Mitchell (British), were sentenced to death by beheading. The primary evidence for their convictions were confessions, two of which were broadcast on television in February 2001, before the trials had even taken place. The released men claim these confessions were extracted under torture. Methods of torture cited by these men include beatings all over the body and beatings with sticks on the soles

2

of the feet, sleep deprivation, and shackling and handcuffing for long periods. (see *Amnesty International Report 2004*)

Other methods of torture described to Amnesty International by victims in recent years have included electric shocks, cigarette burns and nail pulling. (see *Saudi Arabia: Culture of Brutality*, AI Index MDE 23/10/00, 1 June 2000)

The U.S. government clearly recognizes the danger to those detained in Saudi Arabia, saying the following about Saudi Arabia in the latest State Department Country Report on Human Rights Practices: "there were credible reports that the authorities abused detainees, both citizens and foreigners. Ministry of Interior officials were responsible for most incidents of abuse of prisoners, including beatings, whippings, and sleep deprivation. In addition, there were allegations of torture, including allegations of beatings with sticks and suspension from bars by handcuffs. There were reports that torture and abuse were used to obtain confessions from prisoners." (see U.S. Department of State. *Country Reports on Human Rights Practices 2003: Saudi Arabia*, http://www.state.gov/g/drl/rls/hrrpt/2003/27937.htm )

Though not mentioned in its most recent report, the U.S. State Department has also reported in recent years that "... authorities tortured detainees and pressured them to confess by isolation, blindfolding, and drugging over a period of weeks." (see U.S. Department of State. *Country Reports on Human Rights Practices 2001: Saudi Arabia*, http://www.state.gov/g/drl/rls/hrrpt/2001/nea/8296.htm )

Despite the secrecy under which Saudi Arabian criminal justice is conducted, Amnesty International has documented many cases of torture including the following examples:

- Muhammad Rajkhan, a Saudi Arabian national, reportedly suffered damage to his eardrum and loss of weight as a result of torture and ill-treatment following his arrest in February 2003. (see *Amnesty International Report 2004*)
- In August 2001, a group of Christian foreign nationals from India and East Africa, were detained and, upon their release, provided the following testimony to Amnesty International: "On January 28, 2002...by order of the Bremen Prison commander ...we were illegally subjected to severe punishment and physical abuse. Being suspended with chains, each of us were flogged 80 times with a flexible metal cable, and also severely kicked and beaten with anything that came into their hands...Our bodies are wounded, swollen, terribly bruised, and with great pain. Baharu [Mesgistu, Ethiopian national]'s kidney may have been damaged and he is passing blood with his urine." (see *Saudi Arabia Remains a Fertile Ground for Torture with Impunity*, AI Index: MDE 23/004/2002, 1 May 2002)
- Kalesh, an Indian national who was accused of theft and held in incommunicado detention, stated following his release in December 2000: "There were three people in civilian dress...They had a big stick with ropes at each end... I was asked to sit on the floor... At this time I am handcuffed and chained in my legs. The stick with the ropes was inserted through the folding of my knees...and the ropes were tied to my handcuffed hands. I became like a football... I was sitting/lying on the floor and these three devils...

3

started kicking and beating me brutally with the rod... There are still marks... of that day on my body . . ." (see *Amnesty International Report 2002*)

Ahmed Abu Ali has no legal protections from this kind of abuse in Saudi Arabia. As long as Ahmed Abu Ali remains in Saudi Arabia, his legal rights, and indeed his physical safety, remain seriously at risk.

I declare, under penalty of perjury, that the foregoing is true and correct.

Signed and affirmed to this 17th day of September, 2004, in Travis Co. TX by:

_____
Name

Sworn and subscribed to before me this 17th day of September, 2004 in Travis Co. TX

_____
Notary Public

My commissioner expires: 6/7/08

4