IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OMAR MOHAMMED KHALIFH, *et al.*, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1189 (JR) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO STAY PROCEEDINGS PENDING RELATED APPEALS
AND FOR CONTINUED COORDINATION**

Respondents hereby submit this reply memorandum in support of their motion to stay proceedings pending related appeals and for continued coordination in the above-captioned case.

## ARGUMENT

**I.    The Court Has the Authority to Grant a Stay at This Stage of the Proceedings.**

As a preliminary matter, there is nothing in the habeas statute that constrains the Court's broad authority to provide for an orderly schedule and otherwise manage habeas proceedings to further an efficient expenditure of litigation resources. Indeed, pursuant to the Rules Governing Section 2254 Cases in the United States District Courts (the "2254 Rules"),[1] a court may extend

---

[1] The 2254 Rules are applicable to petitions for writ of habeas corpus other than those arising under 28 U.S.C. § 2254, such as the petitions in these cases. See 2254 Rule 1(b) ("In applications for habeas corpus in cases not covered by subdivision (a) [involving persons in state custody], these rules may be applied at the discretion of the United States district court."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) ("The Supreme Court intended the 2254 Rules to apply to petitions filed under § 2241."); Ukawabutu v. Morton, 997 F. Supp. 605, 608 n.2 (D.N.J. 1998) (The 2254 Rules "apply to petitions filed pursuant to 28 U.S.C. § 2241 as well as 28 U.S.C. § 2254."); Wyant v. Edwards, 952 F. Supp. 348, 352 (S.D. W.Va. 1997) ("[T]he Court has concluded that the § 2254 Rules were intended to apply to § 2241 cases . . ."); Hudson v. Helman, 948 F. Supp. 810, 811 (C.D. Ill. 1996) ("Thus, while the instant Petition is

the deadline for responses to habeas petitions beyond the time limits set forth in 28 U.S.C. § 2243 — the 2254 Rules do not indicate a fixed deadline for responding to habeas petitions, and they supersede the time limits set forth in 28 U.S.C. § 2243. Rule 4 provides that the judge shall "order the respondent to file an answer, motion or other response within a fixed time, or to take other action the judge may order." See also Bleitner v. Welborn, 15 F.3d 652, 653-54 (7th Cir. 1994) ("[T]he Rules Governing Section 2254 Cases in the United States District Courts, which have the force of a superseding statute, 28 U.S.C. § 2072(b) . . . loosened up the deadline for responses. Rule 4 leaves it up to the district court to fix the deadline."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) (denying § 2241 petitioner's request for expedited consideration because "[t]he discretion afforded by Rule 4 of the 2254 Rules "prevails" over the strict time limits of 28 U.S.C. § 2243"); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) (denying § 2241 petitioner's motion for correction of court scheduling order because "in the conflict between Rule 4 of the 2254 Rules and 28 U.S.C. § 2243, Rule 4 must prevail"). Furthermore, the 2254 Rules have provided courts with the discretion to consider the burdens involved in filing responses to habeas petitions when implementing case management schedules. See Advisory Committee Notes to 2254 Rules; see also Lonchar v. Thomas, 517 U.S. 314, 325 (1996) (stating that the 2254 Rules confer "ample discretionary authority" on district courts "to tailor the proceedings" in habeas cases). Thus, this Court has the authority to grant a stay of proceedings at this juncture. See Landis v. North American Co., 299 U.S. 248, 254-55 (1936)

---

brought pursuant to 28 U.S.C. § 2241, not 28 U.S.C. § 2254, and involves a prisoner in federal custody, the Rules Governing Section 2254 Cases may still be applied here."); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) ("[A]lthough [petitioner's] petition is under section 2241, and not section 2254, the court may properly apply Rule 4 of the 2254 Rules."). Petitioners have presented no authority to the contrary.

("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); id. at 256 (noting propriety of stay in cases "of extraordinary public moment").

## II.     A Stay of Proceedings Is Appropriate.

There is no dispute that the resolution of the appeals of the decisions of Judges Leon and Green in Khalid v. Bush, Nos. 04-CV-1142 (RJL), 355 F. Supp.2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, 355 F. Supp.2d 443 (D.D.C. 2005), petition for interlocutory appeal granted, No. 05-8003 (D.C. Cir. Mar. 10, 2005), will address the core issues in these important cases[2] and, thus, determine how these cases should proceed, if at all.[3]  Thus, it would be a wasteful expenditure of resources to proceed with litigation regarding the alleged rights of detainees at Guantanamo Bay when the law governing any such rights is presently in dispute and will be resolved by the Court of Appeals on an expedited basis.  Several Judges of this Court have already recognized as much, and generally stayed proceedings in Guantanamo detainee habeas cases pending before them.[4]

---

[2] The petitioner in this case is being detained as an enemy combatant, i.e., he has not been found to be No Longer an Enemy Combatant ("NLEC").

[3] Oral Argument before the D.C. Circuit in these cases is scheduled for September 8, 2005.

[4] See Al Mohammed v. Bush, No. 05-CV-0247 (HHK) (dkt. no. 18); El-Mashad v. Bush, No. 05-CV-0270 (JR) (dkt. no. 29); Al-Adahi v. Bush, No. 05-CV-0280 (GK) (dkt. no. 35); Al Joudi v. Bush, No. 05-CV-0301 (GK) (dkt. no. 26); Al-Wazan v. Bush, No. 05-CV-0329 (PLF) (dkt. no. 15); Al-Anazi v. Bush, No. 05-CV-0345 (JDB) (dkt. no. 21); Alhami v. Bush, No. 05-CV-0359 (GK) (dkt. no. 20); Ameziane v. Bush, No. 05-CV-0392 (ESH) (dkt. no. 12); Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 8); M.C. v. Bush, No. 05-CV-0430 (ESH) (dkt. no. 10); Kabir v. Bush, No. 05-CV-0431 (RJL) (dkt. no. 10); Qayed v. Bush, No. 05-CV-0454 (RMU) (dkt. no. 4); Al-Shihry v. Bush, No. 05-CV-0490 (PLF) (dkt. no. 14); Aziz v. Bush, No. 05-CV-492 (JR) (dkt. no. 16); Qassim v. Bush, No. 05-CV-0497 (JR) (dkt. no. 14); Al-Oshan v. Bush,

To ensure continued coordination of all the Guantanamo detainee habeas cases, proceedings in the above-captioned case should also be stayed pending the resolution of the appeals of Khalid, et al. and In re Guantanamo Detainee Cases.[5]

Petitioners' dismissive treatment of the needless expenditure of judicial and litigation resources that would result from additional proceedings in these cases ignores the cascade effect that would follow from not staying the cases. Presently, there are approximately 125 habeas cases pending on behalf of well over 200 detainees at Guantanamo Bay; the majority of those cases and petitioners were not subject to the decisions of Judges Leon and Green in Khalid,, et al. and In re Guantanamo Detainee Cases. A decision to allow proceedings to go forward pending the resolution of the appeals could precipitate a chain reaction — the scores of petitioners in other pending Guantanamo Bay detainee habeas cases, seeking parity of treatment, would request

---

No. 05-CV-0520 (RMU) (dkt. no. 12); Tumani v. Bush, No. 05-CV-0526 (RMU) (dkt. no. 5); Al-Oshan v. Bush, No. 05-CV-0533 (RJL) (dkt. no. 6); Al Shamri v. Bush, No. 05-CV-0551 (RWR) (dkt. no. 10); Salahi v. Bush, No. 05-CV-0569 (JR) (dkt. no. 8); Mammar v. Bush, No. 05-CV-0573 (RJL) (dkt. no. 5); Al-Sharekh v. Bush, No. 05-CV-0583 (RJL) (dkt. no. 9); Magram v. Bush, No. 05-CV-0584 (CKK) (dkt. no. 9); Al Rashaidan v. Bush, No. 05-CV-0586 (RWR) (dkt. no. 10); Mokit v. Bush, No. 05-CV-0621 (PLF) (dkt. no. 13); Al Daini v. Bush, No. 05-CV-0634 (RWR) (dkt. no. 10); Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 16); Battayav v. Bush, No. 05-CV-0714 (RBW) (dkt. no. 12); Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. no. 13); Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 10); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Hamamy v. Bush, No. 05-CV-0766 (RJL) (dkt. no. 6); Hamoodah v. Bush, No. 05-CV-0795 (RJL) (dkt. no. 13); Rahmattullah v. Bush, No. 05-CV-0878 (CKK) (dkt. no. 3); Nasrat v. Bush, No. 05-CV-0880 (ESH) (dkt. no. 4); Slahi v. Bush, No. 05-CV-0881 (RWR) (dkt. no. 5); Chaman v. Bush, No. 05-CV-0887 (RWR) (dkt. no. 7); Gul v. Bush, No. 05-CV-0888 (CKK) (dkt. no. 3); Basardh v. Bush, No. 05-CV-0889 (ESH) (dkt. no. 4); Shaaban v. Bush, No. 05-CV-0892 (CKK) (dkt. no. 3); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB) (dkt. no. 4); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW) (dkt. no. 3); Kahn v. Bush, No. 05-CV-1001 (ESH) (dkt. no. 3); Mangut v. Bush, No. 05-CV-1008 (JDB) (dkt. no. 2); Salaam v. Bush, No. 05-CV-1013 (JDB) (dkt. no. 2).

[5] The Court presumably would retain discretion to modify a stay of proceedings in a particular case should circumstances arise truly warranting a lifting of the stay.

the Court to allow additional proceedings, perhaps even by lifting or modifying stays that have already been entered. This scenario is exactly what Judge Green aimed to avoid when she denied petitioners' motion to reconsider her order granting a stay pending appeal "in light of the substantial resources that would be expended and the significant burdens that would be incurred should this litigation go forward." See Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases (Feb. 7, 2005) (Green, J.). Indeed, any proceedings in these cases that are permitted to go forward very likely would need to be revisited or relitigated, and may be shown to have been altogether unnecessary, once the Court of Appeals provides guidance regarding handling of the habeas claims of Guantanamo Bay detainees such as petitioners. Thus, in the interest of efficiency of judicial and litigation resources, as well as to minimize administrative burdens, this Court should hold proceedings in the above-captioned cases in abeyance pending the outcome of the appeals of the decisions by Judges of this Court in the other Guantanamo Bay detainee cases.[6]

In contrast to the obvious and tangible burdens of proceeding with these cases while the D.C. Circuit considers the appeals in In re Guantanamo Detainee Cases, and Khalid, petitioner unfairly dismisses the fact that "the law in this Circuit is unsettled." Al-Marri v. Bush, No. 04-CV-2035 (GK) (dkt. no. 26). See Pet.'s Opp. at 4, 6. Petitioner's argues the case should not be stayed at this time because the Guantanamo Bay cases might eventually be appealed to the United States Supreme Court after a decision in the D.C. Circuit Court of Appeals. Id. at 4. Despite that possibility, it simply makes no sense to proceed with the merits of the this case when

---

[6] Petitioners' Opposition also seeks discovery into the detainee's medical records. See Pet.'s Opp at 10. However, if a stay is granted, it should properly stay all discovery, including production of the detainee's medical records.

the core and highly significant issues it presents will be resolved by the Court of Appeals on an expedited basis.

Further, for reasons discussed in the respondents' memorandum in support of its motion to stay, a factual return is not appropriate at this time, see Mem. at 11-13; however, if the submission of a factual return is required, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently filed cases are seeking factual returns and given the logistical burdens posed by an undertaking to produce returns in the cases.[7]  A schedule for any such undertaking should be no more restrictive than is necessary and both respondents and petitioner agree that in the event a factual return it ordered, 90 days is an appropriate time frame.  See Pet.'s Opp at 10.  A more burdensome schedule would be unnecessary, given that a stay of proceedings is appropriate and that it will take several weeks for petitioner's counsel to obtain the security clearances necessary for counsel to have access to the classified factual returns under the Protective Order.

## III.    The Court Should Not Condition a Stay in This Case on the Imposition of the Preliminary Injunctive Relief Sought By Petitioner.

Petitioner requests the Court to condition a stay in this case on the imposition of preliminary injunctive relief requiring respondents to "preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at Guantanamo and

---

[7] Each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders.  Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel.  Further, submission of these returns will increase the risks of inadvertent or other disclosure or compromise of classified information.

all records relating to the Petitioner." Pet.'s Opp at 11.[8] Petitioner's request for injunctive relief should be rejected.

As an initial matter, petitioner's operating assumption that a court entering a stay pending appeals in related cases may craft a stay order that imposes any and all preliminary injunction orders without regard to whether sufficient factual bases exists for such orders and without regard to the degree to which such orders would alter the status quo or impose mandatory duties upon a party, is not supported by logic. Preliminary injunctive relief "is an extraordinary and drastic remedy" that should not be available "unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original). Preliminary injunctive relief is not available except upon a showing by the movant that (1) the movant will suffer irreparable injury in the absence of an injunction; (2) the movant has a substantial likelihood of success on the merits with respect to the requested relief; (3) the injunction would not substantially injure other interested parties; and (4) the injunction would further the public interest. See Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001). Petitioner's approach would circumvent these standards completely, and it thereby admits of no limiting principle.[9] See Battayav v. Bush, No. 05-CV-0714 (RBW) (dkt. no. 12) (denying a request for a preservation order because it was not properly before the court as petitioners had

---

[8] Petitioner's counsel also note that in a previous motion they have sought preliminary injunctive relief requiring respondents to provide advance notice of any transfer of petitioner to the custody of a foreign government or to another United States facility. See Pet.'s Opp at 11. Respondents have opposed this motion in a separate filing.

[9] See Al-Anazi v. Bush, No. 05-CV-345 (JDB), Memorandum Opinion (Apr. 21, 2005) at 19 n.11 (dkt. no. 22) ("if petitioners cannot meet the prerequisites of a motion for preliminary injunction [requiring advance notice of transfer] (as the Court concludes), it is unlikely they should receive that same relief through the backdoor of a stay").

simply made a request to preserve documents, failing to make any showing that the equitable relief sought was warranted.)[10]

In any event, entry of a preservation order in not appropriate. This case is utterly devoid of any circumstances warranting a preservation order. Petitioner makes no showing whatsoever that evidence is being destroyed or that a preservation order is necessary. Moreover, respondents are well aware of their obligation not to destroy evidence that may be relevant in pending litigation. Administrative agencies are entitled to a presumption that "that they will act properly and according to law." See, e.g., FCC v. Schreiber, 381 U.S. 279, 296 (1965). Even in a case involving private parties, "[t]o supplement every complaint with an order requiring compliance with the Rules of Civil Procedure would be a superfluous and wasteful task, and would likely create no more incentive upon the parties than already exists." Hester v. Bayer Corp., 206 F.R.D. 683, 685 (M.D. Ala. 2001); see also Pepsi-Cola Bottling Co., 1995 WL 783610, at *3 ("To

---

[10] The weight of authority is that the four requirements for issuance of an injunction must be satisfied before a preservation order may issue. See Madden v. Wyeth, No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003); Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc., Civ. No. 3-94-784, 1995 WL 783610, at *3-*4 (D. Minn. Oct. 20, 1995); Humble Oil & Refining Co. v. Harang, 262 F. Supp. 39, 42-43 (E.D. La. 1966). Other courts have used a modified, multi-factor analysis for the issuance of preservation orders. See Capricorn Power Co. v. Siemens Westinghouse Power, 220 F.R.D. 429, 433-434 (W.D. Pa. 2004) (focusing on "1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved"); see also Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 137-38 (Fed. Cl. 2004) (due to "very potency" of inherent power of a court to issue preservation orders and the fact that the Supreme Court has "cautioned inherent powers must be exercised with restraint and discretion," proponent of preservation order must demonstrate that the preservation order is necessary – absent order significant risk exists that evidence will be destroyed – and not unduly burdensome or overbroad); but see Capricorn Power, 220 F.R.D. at 434 n.2 (criticizing Pueblo of Laguna test as lacking "adequate precision" and "sufficient depth of analysis").

further embellish the grave importance of document preservation, through an administratively demanding mechanism, seems inordinate, at best.").[11] Furthermore, petitioner's request to preserve "preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at Guantanamo and all records relating to the Petitioner," Pet.'s Opp at 11, is overbroad and potentially burdensome to the extent it goes beyond what might otherwise be permissible with respect to any discovery that might ever be appropriate in a habeas case. See Harris v. Nelson, 394 U.S. 286, 296, 300 (1969) (discovery available in habeas cases only in narrow circumstances and upon showing of good cause).

Accordingly, petitioner's request for a preservation order should be denied.

## CONCLUSION

For the reasons stated in respondents' motion to stay proceedings pending related appeals and for continued coordination, and in this supporting reply memorandum, this Court should stay further proceedings in the above-captioned cases pending the appeals of Judge Leon's decision in Khalid, et al. and Judge Green's January 31, 2005 decision in In re Guantanamo Detainee Cases. Respondents do not object to entry of the Protective Order and other related, supplementary orders in this case to facilitate counsel visits to Guantanamo Bay.

---

[11] In addition, a preservation order is further unnecessary because Judge Kessler has already entered an order to "preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at the Guantanamo Bay detention facility." Al-Marri, No. 04-CV-2035 (GK), Order (dkt. no. 25) (Mar. 7, 2005). Thus, evidence is being preserved.

Dated: August 4, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   /s/ James J. Schwartz
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7310
Washington, DC  20530
Tel:  (202)616-8267
Fax:  (202) 616-8202

Attorneys for Respondents