IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OMAR MOMHAMMED KHALIFH, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 05-1189 (JR) |
| GEORGE W. BUSH, et al., | ) ) ) | |
| Respondents. | ) ) | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RECONSIDERATION OF *SUA SPONTE* DISMISSAL,
NOTICE OF INTENTION TO FILE DTA PETITION IN THE D.C. CIRCUIT,
AND MOTION FOR STAY-AND-ABEY ORDER**

The Petitioner, Omar Mohammed Khalifh, through his attorneys, moves this Court to reconsider its *sua sponte* dismissal of Petitioner's habeas corpus petition and instead enter a "stay and abey" order while a petition pursuant to the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, Tit. X, 119 Stat. 2739 (2005), is litigated in the appellate court.

This matter was stayed on the Respondents' motion since October 24, 2005, and was dismissed upon the Court's *sua sponte* order of April 5, 2007 finding a lack of subject matter jurisdiction following *Boumediene v. Bush* and *Al Odah v. United States*, 476 F.3d 981 (D.C. Cir.), *cert. denied,* 549 U.S. ___ (Apr. 2, 2007).

Petitioner notifies the Court of the Petitioner's intention to file a Petition pursuant to the DTA with the United States Court of Appeals for the District of Columbia Circuit. Petitioner will file a DTA Petition in light of the statement of Justices Stevens and Kennedy on the denial of certiorari in *Boumediene* regarding the exhaustion of available remedies under the DTA. *See* 2007 WL 957363 (U.S., Apr. 2, 2007).

The DTA litigation will provide the Petitioner and this Court requisite information regarding disputed jurisdictional questions pending before this Court, and may result in a remand to this Court based on the military's lack of initial jurisdiction over the Petitioner, or lead to a limited remand to this Court for resolution of controverted facts, or render moot some or all of the claims pending before this Court.  Moreover, a stay and abey order will ensure that important rights of the Petitioner remain intact, such as the access-to-counsel procedures provided in the Protective Order entered on September 16, 2005, and the restriction on transferring the Petitioner during the pendancy of proceedings without leave of court given the likelihood of torture or death in his home country, Libya, entered as part of the Court's order on September 25, 2005.[1]

**I.    Where a Federal Habeas Petition has Been Filed, and a Potential Remedy Remains to be Exhausted, the Supreme Court has Approved – and Under Circumstances Present Here Required – the Procedure of Entering an Order Staying the Federal Habeas Proceeding and Holding the Case in Abeyance While the Potential Remedy is Exhausted.**

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court explicitly approved the stay-and-abey procedure in the context of federal habeas corpus proceedings.  In that case, the prisoner had filed a mixed habeas petition in federal court – one containing both claims exhausted through the state court system and unexhausted claims.  Given the major procedural risks of a dismissal order, the Court found that District Courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court.  The federal habeas corpus

---

[1] That order, to the extent that it places restrictions on the Respondents' ability to transfer or repatriate the Petitioner, is pending appeal before the D.C. Circuit in a consolidated proceeding, *Abdah v. Bush*, No. 05-5224.  This Court's *sua sponte* dismissal of the underlying case would apparently preclude the D.C. Circuit from ruling on that pending matter.

case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey. In the absence of intentional dilatory tactics by the petitioner, "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). The conditions under which failure to stay-and-abey would constitute an abuse of discretion – no deliberate delay, good cause, and potentially meritorious claims – are abundantly present in this case.

First, the Petitioner has done nothing to delay and everything to accelerate this case. The stay that has kept his case inactive, except for issues relating to access and attorney-client relations, resulted from the government's motion eighteen months ago. The Petitioner filed a petition for habeas corpus relief on June 14, 2005 and sought a Temporary Restraining Order and Preliminary Injunction Requiring Respondents to Provide Counsel for Petitioner and the Court with 30-days Advance Notice of Any Intended Removal from Guantanamo on July 25, 2005. Throughout the pleadings, the Petitioner has invoked the need for habeas relief to be prompt. Unlike the death penalty cases that caused the Supreme Court concern in *Rhines*, every day of delay is disastrous for the Petitioner.[2]

Second, there is good cause for the failure to exhaust: the potential remedy did not exist until after the habeas corpus petition was filed and did not purport to provide the habeas relief to which

---

[2] In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Stevens, J., concurring, joined by Justices Ginsburg and Breyer).

the Petitioner was entitled at the time the habeas action was filed. In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Those complexities are nothing compared to what Guantanamo detainees face. The questions left open in the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466 (2004), which established a right to proceed under § 2241 at the time the Petitioner submitted his documents, and the subsequent Detainee Treatment Act of 2005 and Military Commission Act of 2006, have resulted in major complexities. The Petitioner, from another country, speaking another language as his native tongue, did not even have the potential DTA remedy prior to October 2006 because, as the Supreme Court held, the DTA did not apply retrospectively to habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2762-69 (2006). The Petitioner had excellent reasons for not initiating the DTA procedures until the denial of certiorari in *Boumediene*.

Third, the claims raised both in this Court and the DTA petition are meritorious. The Petitioner, a 35-year-old man with severely limited mobility who is nearly blind, was seized in Pakistan by Pakistani authorities and transferred into the custody of the United States. He has been held in near-solitary confinement at Guantanamo with no contact with the outside world but for three visits with his counsel during the past four years, without formal charges or so much as the government's production of the Combatant Status Review Tribunal (CSRT) record. The bottom line is simple: the petition for habeas corpus should be maintained in this Court, subject to a stay-and-abey order, so that there is not a critical gap between dismissal and proceedings in the D.C. Circuit that effectively eliminates the Petitioner's right to counsel and subjects him to life-threatening repatriation to Libya. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, or the United States

4

Congress restores this Court's full jurisdiction,[3] this Court should be in position to proceed immediately on the issues raised.

Under the controlling authority of *Rhines*, the Court should enter an order staying the case, as it has been stayed to date, and holding the disposition of the merits in abeyance pending the outcome of the Petition for Immediate Release and Other Relief Under the Detainee Treatment Act of 2005.

## II.   Maintenance of the Status Quo is Necessary for Adequate Exhaustion of the DTA Proceedings in the Court of Appeals.

The Respondents oppose the motion for a stay-and-abey order. In the statement accompanying the *Boumediene* order, two Justices stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 2007 WL 957363, at *1 (Justices Stevens and Kennedy, statement respecting denial of certiorari) (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)). Any government action to limit the current level of access by counsel to the Petitioner severely prejudices both the DTA action and the habeas litigation. This Court should carefully protect the status quo by granting the stay-and-abey order to assure the Petitioner is not prejudiced in his ability to litigate the DTA action and to preserve potential remedies before this Court.

The development of the necessary facts and the need for client consultation are basic to the attorney-client relationship. Under the ethical rules, the client must have the opportunity to advise the attorney of relevant facts, to provide direction in the litigation, and to participate in tactical and

---

[3] *See, e.g.,* Restoring the Constitution Act of 2007, H.R. 415 and S. 576, and the Habeas Corpus Restoration Act of 2007, H.R. 1416 and S. 185, 110th Cong. (2007).

strategic decisions. To accomplish these ethical obligations under the circumstances of Guantanamo detention has been a challenge.[4] Any disruption of the status quo would severely injure the Petitioner's ability to litigate the DTA proceedings and to maintain his separate claims for relief that are pending before this Court.

Petitioner's physical condition is poor and is quickly deteriorating. He has severely limited mobility including a poorly-fitted prosthetic right leg and a shattered left leg held together by stabilizing rods. His eyesight has significantly deteriorated during his imprisonment at Guantanamo. While arriving with normal vision, the Petitioner is now completely blind in his left eye and is quickly losing vision in his right eye, possibly the result of untreated Glaucoma. It is vital that counsel for Petitioner maintain the ability to communicate with and visit their client to monitor his medical condition and seek appropriate medical care for his conditions. If Petitioner is ultimately released completely blind and with severely limited mobility, then his release will be a death sentence, not freedom.

The Court's *sua sponte* dismissal of the case, and hence elimination of the stay, would appear to permit the Respondents' to transfer, repatriate, or "release" the Petitioner to his home country, Libya. If transferred to Libya, Petitioner is likely to face torture or death. Petitioner, a political activist who opposed the Gaddafi regime due to the lack of political and religious freedom, fled Libya in 1995. He has never returned and had no communication with his family in Libya since that time. When a Libya delegation visited the Petitioner in Guantanamo in 2005, representatives of the

---

[4] This Court received briefing and argument regarding these difficulties during the litigation of the filter team motion that resulted in the Court's decision in *Boumediene v. Bush*, 450 F. Supp.2d 25 (D.D.C. 2006).

Libya government told Petitioner, "we will cut into pieces, iron your whole body, molest you, rape you," and threatened to write a report on the Petitioner in his own blood from the interrogation.

This Court has pending several pleadings regarding the Court's jurisdiction and authority to grant relief to the Petitioner. The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to deciding the issues before the Court including: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally suspended or eliminated? Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised"? *See* 2007 WL 9573363, at *1.

On the underlying questions regarding elimination of the writ of habeas corpus, because the constitutional question is contingent on the effectiveness of the DTA procedures, this Court has jurisdiction to determine its own jurisdiction. *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155 (2006) (a federal court's adjudicatory authority includes "its authority to determine its own jurisdiction"); *see also Ex parte Milligan*, 71 U.S. 2, 118, 131 (1866) (reviewing the underlying facts to determine that the predicates for military jurisdiction were lacking and granted writ of habeas corpus). The Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the Petitioner, the Court must provide an adequate record for appellate and Supreme Court review, which requires that the present case remain in place until after the Petitioner has exhausted the DTA procedures. During that process, the government should be foreclosed from prejudicing the petitioner's ability to litigate – at the District Court or

7

Circuit Court level – these questions of obvious and historical importance.  Finally, should Congress act to restore the jurisdiction of this Court, in whole or in part, maintaining the record and underlying orders in this case in abeyance would promote judicial efficiency and recognize the critical importance of promptness in addressing petitions for habeas corpus.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that this Court reconsider its *sua sponte* order dismissing the Petition for Writ of Habeas Corpus and instead enter an order preserving the status quo by continuing its stay of litigation going to the merits of the pending petition for a writ of habeas corpus and holding such litigation in abeyance pending the outcome of the Petitioner's Petition for Immediate Release and Other Relief Under the Detainee Treatment Act of 2005 in the the United States Court of Appeals for the District of Columbia Circuit.

RESPECTFULLY SUBMITTED April 10, 2007.

Respectfully submitted,

Counsel for Petitioner:

  /s/ Cary Silverman
Cary Silverman (D.C. Bar No. 473658)
SHOOK, HARDY & BACON L.L.P.
600 14th Street NW, Suite 800
Washington, D.C.  20005-2004
Tel:  (202) 783-8400
Fax:  (202) 783-4211

Edmund Burke
BURKE MCPHEETERS BORDNER & ESTES
737 Bishop Street, Suite 3100
Honolulu, Hawaii  96813
Tel:  (808) 523-9833
Fax:  (808) 528-1656