IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| El-Mashad v. Bush | ) | Case No.  05-CV-0270 (JR) |
| Aziz v. Bush | ) | Case No.  05-CV-0492 (JR) |
| Salahi v. Bush | ) | Case No.  05-CV-0569 (JR) |
| Khiali-Gul v. Bush | ) | Case No.  05-CV-0877 (JR) |
| Khalifh v. Bush | ) | Case No.  05-CV-1189 (JR) |
| Idris v. Bush | ) | Case No.  05-CV-1555 (JR) |
| Kabir (Sadar Doe) v. Bush | ) | Case No.  05-CV-1704 (JR) |
| Al-Mudafari v. Bush | ) | Case No.  05-CV-2185 (JR) |

_____

**RESPONDENTS' OPPOSITION TO PETITIONERS'
MOTION FOR RECONSIDERATION AND MOTION TO STAY AND ABEY**

On April 5, 2007, this Court dismissed the above-captioned cases in keeping with the

decision in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir.), *cert. denied*, ___  S.Ct. ___, 2007 WL

957363 (Apr. 2, 2007).  This Court was manifestly correct in doing so.  Therefore, petitioners'

request that their cases be reinstated has no merit.  Particularly in light of under the exacting

standards of Rule 59(e), Fed.R.Civ.P., the vehicle that petitioners are trying to use to avoid the

consequences of this Court's dismissal order, that decision is not subject to successful challenge.

Petitioners are certainly not entitled to the sort of order that they seek here, which would reverse

the effect of the dismissal only to stay these cases and hold them in abeyance pending their

attempt to obtain relief in other fora.

## ARGUMENT

**I.    PETITIONERS' MOTION FOR RECONSIDERATION DO NOT MEET THE STANDARDS OF RULE 59(E)**

Because petitioners' motion for reconsideration was filed within 10 days of the final order of dismissal, it is treated as a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. "Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). "Rule 59(e) motions 'need not be granted unless the district court finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."'" *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057–58 (D.C. Cir. 1998) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir.1996) (per curiam)).

> The circumstances under which a Rule 59(e) may be granted are narrow, indeed.
>
> "The function of a motion to alter or amend a judgment is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory ... [or] to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *In re Halko*, 203 B.R. 668, 671-72 (Bankr.N.D.Ill.1996) (internal quotation marks and citations omitted).

*Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000).  In this case, it is even clearer than usual that petitioners are inappropriately trying to use Rule 59(e) to take multiple "bites at the apple."  In a typical case, a Rule 59(e) applicant asks for relief under that rule from the judge who entered the judgment being challenged before any appeals are pursued.  Here, Congress decided that this Court would not have jurisdiction over cases such as these, the Court of Appeals for this Circuit upheld that statute in the face of challenge, the Supreme Court denied certiorari, and only then did this Court dismiss the cases.  Because this Court was bound to

comply with on-point Circuit precedent, *see Save Our Cumberland Mountains, Inc. v. Hodel*,

826 F.2d 43, 49 (D.C. Cir.1987) ( "[w]hether or not [a prior case's] position on this point is

correct ... this panel is bound by that position as the law of the circuit"), *vacated in part on other*

*grounds*, 857 F.2d 1516 (D.C. Cir.1988), the dismissal cannot be successfully challenged under

Rule 59(e).  *See Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J.,

concurring)  ("Once [an] opinion [is] released it [becomes] the law of this circuit.").

II.      **PETITIONERS' MOTION TO "STAY AND ABEY" IS GROUNDLESS**

        A.      **THE CASES OF PETITIONERS WHO REMAIN DETAINED AT**
                **GUANTANAMO BAY SHOULD BE DISMISSED**

        All of the petitioners in the above-captioned cases, with one exception discussed *infra*

section B, are currently detained at Guantanamo Bay, and all of those petitioners have been

determined by the United States to be enemy combatants or are awaiting such a determination of

their status.  *See* Second Declaration of Karen L. Hecker ¶¶ 2–3 (attached as Exhibit A)

(explaining that all detainees currently at Guantanamo Bay have been determined by DoD to be

enemy combatants or are awaiting such a determination).   In light of *Boumediene*, the law of

this Circuit is settled:[1] under the Military Commissions Act of 2006, Pub. L. No. 109-366, § 7,

---

        [1] Some of the *Boumediene* petitioners have filed motions in the Court of Appeals and the
Supreme Court requesting that issuance of the mandate in *Boumediene* be stayed.  However,
"[o]nce [an] opinion [is] released it [becomes] the law of this circuit."  *Ayuda, Inc. v.*
*Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring); *see also Save Our*
*Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 49 (D.C. Cir.1987) ( "[w]hether or not [a
prior case's] position on this point is correct . . . this panel is bound by that position as the law of
the circuit"), *vacated in part on other grounds*, 857 F.2d 1516 (D.C. Cir.1988).  Indeed, the
Court of Appeals itself considers *Boumediene* binding; in other pending Guantanamo-related
appeals, the Court has recently ordered on the authority of *Boumediene* that those cases be
dismissed.  *See* Judgment filed Mar. 22, 2007 in *Kiyemba v. Bush*, Nos. 05-5487, *et al.* (D.C.
Cir.) (copy attached as Exhibit B); Order filed Apr. 9, 2007 in *Paracha v. Bush*, No. 05-5194
(D.C. Cir.) (copy attached as Exhibit C).

120 Stat. 2600, ("MCA"), federal district courts do not have jurisdiction over cases brought by

aliens at Guantanamo Bay detained as enemy combatants or awaiting determination of their

status, and such aliens do not have constitutional rights.  The cases of such petitioners,

accordingly, were properly dismissed.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

94 (1998) ("'Without jurisdiction [a] court cannot proceed at all in any cause.  Jurisdiction is

power to declare the law, and when it ceases to exist, the only function remaining to the court is

that of announcing the fact and dismissing the cause.'" (quoting *Ex parte McCardle*, 74 U.S. (7

Wall.) 506, 514 (1868)).[2]

The motions of various petitioners to "stay and abey" these cases provide no basis for a

contrary result.  In their motions, petitioners ask the Court to stay these cases because they

intend to pursue petitions for review under the Detainee Treatment Act of 2005, Pub. L. No. 109-

148, Tit. X, 119 Stat. 2680 ("DTA"), and, once they have exhausted that remedy in the Court of

Appeals, they might file a petition for *certiorari* in the Supreme Court, and the Supreme Court

might grant their petition, and, within the scope of its review, the Supreme Court might review

the Court of Appeals' jurisdictional ruling in *Boumediene*.  Even if such a speculative chain of

events could support petitioners' request, the extraordinary and open-ended stay requested would

be contrary both to the law of the Circuit, pursuant to the MCA, that these cases should be

dismissed for want of jurisdiction, and to the clear intent of Congress, expressed in the MCA, to

---

[2] *See also Hicks v. Bush*, No. 02-CV-0299 (CKK), 2007 WL 902303 at *5 (D.D.C. Mar. 23, 2007) ("In *Boumediene*, the D.C. Circuit clearly held that Congress intended to deprive the federal district courts of jurisdiction over 'all cases, without exception, pending on or after the date of the enactment of [the MCA] which relate to any aspect of the detention, transfer, treatment, trial or conditions of detention of an alien detained by the United States since September 11, 2001,' and that Congress did so constitutionally . . . .  As such, this Court lacks jurisdiction to review Petitioner's habeas petition").

withdraw District Court jurisdiction over the detainees' habeas cases.  *See Boumediene*, 476 F.3d

at 986, 994; *see also id.* at 999 (Rogers, J., dissenting).  Petitioners' apparent disagreement with

the Court of Appeals' holdings and resolution of the jurisdictional issue in these cases, however,

is no reason to decline to give effect to the law of the Circuit in these cases.  Indeed, petitioners'

requests that the Court "stay and abey" these cases asks the Court improperly to pretend to retain

jurisdiction that the Court of Appeals has clearly held does not exist.[3]

Petitioners' reliance for their request on cases in which District Courts have stayed,

rather than dismissed, habeas actions brought pursuant to 28 U.S.C. § 2254, pending exhaustion

of remedies in state court, is similarly misplaced.  As an initial matter, filing a DTA petition is

not merely an exhaustion requirement for the detainees' habeas cases.  Rather, as the Court of

Appeals held in *Boumediene*, MCA § 7 eliminates federal court jurisdiction over habeas petitions

filed by Guantanamo detainees.  *See* 476 F.3d at 986-88, 994; *see also Hicks*, 2007 WL 902303

at *6 (denying a detainee's motion for preliminary injunction because "*Boumediene* holds that

this Court lacks jurisdiction to even consider Petitioner's claims, such that this Court is

precluded from even engaging in a balancing of the factors that would be considered on a motion

for a preliminary injunction").  Thus, by statute, petitioners have no right to pursue these cases,

even after they pursue their remedies in the Court of Appeals under the DTA.  The cases relied

---

[3] Some petitioners suggest that dismissal of these cases was premature for this Court to
dismiss Petitioners' cases for lack of jurisdiction before the Supreme Court acts on the pending
*certiorari* petition in *Hamdan v. Rumsfeld*, No. 06-1169, or the original habeas action in *In re
Ali*, No. 06-1194.  *See*, *e.g*., *Idris v. Bush*, No. 05-CV-1555 (JR), Mot. to Alter or Amend the
Judgment at 5-6; *Al-Mudafari v. Bush*, No. 05-CV-2185 (JR), Mot. to Alter or Amend the
Judgment at 5-6.  No petition for *certiorari*, however, could bear more directly on the decision in
*Boumediene* than the petition for *certiorari* in *Boumediene* itself, which was denied by the
Supreme Court.  Accordingly, there is no reason to ignore the law of the Circuit reflected in
*Boumediene* pending the Supreme Court's disposition of other cases.

on by petitioners involve situations, unlike here, in which court action was pursuant to or consistent with habeas jurisdiction conferred by statute. *Rhines v. Weber*, 544 U.S. 269 (2005), on which petitioners principally rely, involved a situation in which a federal statute of limitations meant that the habeas petitioner in that case faced certain loss of his habeas rights if the limitations period ran before he was able to exhaust his habeas arguments in state court. These cases, by contrast, do not involve any temporal bar to a habeas petition that would otherwise be cognizable in court; rather, petitioners seek to maintain their habeas claims in this Court in the face of a statute that says that they may not do so, but that also provides they may pursue DTA petitions in the Court of Appeals, an avenue of relief that petitioners could have pursued at any time since it was created with the enactment of the DTA over one year ago. In any event, in the cases relied on by petitioners the Supreme Court made clear that the authority of a court to enter a stay is constrained by statute. *See*, *e.g.*, *Rhines*, 544 U.S. at 276 ("District courts do ordinarily have authority to issue stays . . . where such a stay would be a proper exercise of discretion. [The Antiterrorism and Effective Death Penalty Act of 1996] does not deprive district courts of that authority, *cf.* 28 U.S.C. § 2254(b)(1)(A) ('An application for a writ of habeas corpus ... shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State' (emphasis added)), but it does circumscribe their discretion."). Here, the Court, pursuant to statute, lacks jurisdiction. Consequently, these cases were appropriately dismissed.

Petitioners' "stay-and-abey" motions, moreover, make clear that they do not genuinely seek a true stay of these cases. Rather, the "stay-and-abey" relief they seek contemplates that

various orders of the Court, including the protective order imposing a counsel access regime[4] and

any orders requiring advance notice of any transfer of detainees from Guantanamo, would

remain extant and enforceable, effectively imposing Court-ordered obligations where the Court

has no jurisdiction to act.[5]  But the Court of Appeals has made clear that this Court lacks

jurisdiction in these cases, so that the "only recourse is to vacate the district courts' decisions

[*i.e.,* the prior decisions of Judges Green and Leon] and dismiss the cases for lack of

jurisdiction." *Boumediene.* 476 F.3d at 994.  *See also Steel Co.*, 523 U.S. at 94 (" 'Without

jurisdiction [a] court cannot proceed at all in any cause.  Jurisdiction is power to declare the law,

and when it ceases to exist, the only function remaining to the court is that of announcing the

fact and dismissing the cause.' ") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) at 514).

Petitioners' suggested arrangement to continue the habeas litigation regime that Congress

rejected in its enactment of the DTA and MCA is unfounded and without basis in law.[6]

---

[4] *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004) ("Protective Order"); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (Nov. 10, 2004).

[5] *See*, *e.g.*, *El Mashad v. Bush*, No. 05-CV-270 (JR), Motion to Alter and Amend the Judgment and for a Stay and Abey Order at 8-9 (relying on professed need for continued application of protective order in support of stay and abey order); *Salahi v. Bush*, No. 05-CV-569 (JR), Motion to Alter and Amend the Judgment and for a Stay and Abey Order at 6-7.

[6] Of course, certain requirements of this Court's Protective Order, *i.e.*, requirements pertaining to the handling of classified and "protected" information, appropriately retain vitality beyond the required dismissal of these cases.  Paragraph 50 of the Protective Order in these cases provides that "[t]he termination of these proceedings shall not relieve any person or party provided classified information or protected information of his, her, or its obligations under this protective order."  Furthermore, petitioners' counsel explicitly agreed, as a condition for access to such information, that the Protective Order's non-disclosure requirements would survive termination of the litigation and remain forever binding.  *See* 344 F. Supp. 2d 174, ¶ 17 &

To the extent that an issue such as counsel access or any other appropriate matter is to be

addressed, it must be addressed in the Court of Appeals in the context of properly filed DTA

petitions for review of CSRT determinations.  The Court of Appeals must establish its own

procedures, based on the procedural rights that Congress provided to detainees in the DTA and

appropriate to the nature of the Court of Appeals' review under the DTA.  *Cf. Telecomms.*

*Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("By lodging review of agency

action in the Court of Appeals, Congress manifested an intent that the appellate court exercise

sole jurisdiction over the class of claims covered by the statutory grant of review power."); *id.* at

75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive

jurisdiction is subject to the exclusive review of the Court of Appeals).  Indeed, issues relating to

the scope and terms of an appropriate protective order and counsel access regime already are

being addressed in the Court of Appeals in two pending DTA petition cases, *Bismullah v. Gates*,

No. 06-1197, and *Parhat v. Gates*, No. 06-1397, with oral argument scheduled for May 15, 2007.

Consequently, by seeking to put back into place the protective order that has governed these

---

Exhibit B (for access to classified information, counsel required to sign Memorandum of
Understanding that nondisclosure requirements survive litigation); *id.* ¶ 35 & Exhibit C (for
access to protected information, counsel required to sign Acknowledgment that nondisclosure
requirements survive litigation).  *Cf. United States v. Mine Workers,* 330 U.S. 258, 289-95
(1947) (upholding criminal contempt citation for violation of court order even on the assumption
that the court issuing the citation was without jurisdiction over the underlying action *ab initio*);
*Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004) (court's supervisory power
to enforce protective order requirements protecting records involved in litigation does not
disappear because jurisdiction over the relevant controversy has been lost); *Poliquin v. Garden
Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("the lubricating effects of the protective order on
pre-trial discovery would be lost if the order expired at the end of the case").  But the sensible
approach to the protection of classified and "protected" information reflected in these provisions
of the Protective Order does not translate into the sort of broad-based order under which these
cases would be stayed in name but would continue to be litigated in practice, as petitioners seem
to request.

cases in this Court, petitioners are effectively appealing to this Court from decisions of the Court

of Appeals that have not even been made.  That sort of anomalous litigation strategy is, at best, a

waste of time and should not be permitted to succeed.

In any event, with respect to counsel access, dismissal of these cases does not signal an

immediate cut-off of access by counsel to their properly represented detainees.  Nothing is

preventing petitioners from proceeding with the filing of DTA petitions in the Court of Appeals

at this time,[7] and once a petition is filed in the Court of Appeals, the Government will be willing

to agree to entry, on an interim basis, of the protective order and counsel access regime it has

proposed in *Bismullah* and *Parhat,* so that there would be measures in place to govern counsel

access after a DTA petition is filed, but before a ruling in *Bismullah* and *Parhat*. Counsel's

interim agreement to those measures would be without prejudice to their ability to argue for

different protective order terms in the Court of Appeals.  In fact, the Court of Appeals in one

DTA case already has entered the government's proposed order on an interim basis in order to

facilitate counsel access.[8]  Accordingly, there is no reason associated with the issue of counsel

access that counsels in favor of undoing the dismissal of these cases.  That dismissal brought this

Court's counsel access regime to an end, only to be replaced virtually immediately by a counsel

access regime entered in DTA cases, on an interim basis or otherwise, by the Court of Appeals,

as appropriate.

---

[7] A DTA petition can be merely a short document that contains the names of the
petitioner and respondent(s) and identifies the determination for which review is sought. *See*
FED. R. APP. P. 15(a)(2); FED. R. APP. P. Appendix, Form 3.  The DTA petition is simply a
case-initiating document; the merits of the case are addressed in the parties' later-filed merits
briefs.

[8] *See Madni v. Gates*, No. 07-1083 (D.C. Cir.), Order (filed Apr. 16, 2007).

Thus, petitioners' desire for the continuation of these cases in order to obtain the benefit of various District Court orders provides no legitimate or legally appropriate basis to reverse the dismissal of the cases or for granting petitioners' requested "stay-and-abey" relief.  Dismissal was required by the MCA and the law of the Circuit.

* * *

For all of the foregoing reasons, the cases involving detainees currently detained at Guantanamo must be remain dismissed.

> **B.** **THE CASE OF PETITIONER ALLADEEN WHO WAS DETERMINED TO BE NO LONGER AN ENEMY COMBATANT AND HAS BEEN RELEASED FROM UNITED STATES CUSTODY WAS ALSO PROPERLY DISMISSED.**

One petitioner in the above-captioned cases – petitioner Alladeen (ISN 716) in *El Mashad v. Bush*, No. 05-CV-1555 (JR)[9] – was previously determined by DoD to be no longer classified as an enemy combatant ("NLEC"), *i.e.*, to no longer meet the criteria for enemy combatant status, and was released from United States custody.  *See* Notice of Transfer of Petitioner (dkt. no. 81).  Consequently, petitioner Alladeen's case also should remain dismissed.

Release from United States' custody usually resolves the controversy raised by a habeas petition because "the traditional function of the writ [of habeas corpus] is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Thus, when the United States released petitioner from its custody, petitioner effectively received all the relief he could seek

---

[9] Alladeen's habeas case, *Alladeen v. Bush*, 05-CV-833 (JR), was consolidated with *El Mashad v. Bush*, No. 05-CV-1555 (JR).  *See* Order (Dec. 7, 2005).

through habeas, and his case became moot.[10]  *See Qassim v. Bush*, 466 F.3d 1073, 1076-78 (D.C.

Cir. 2006) (per curiam) (granting emergency motion to dismiss because petitioners' habeas

petition was rendered moot when petitioners were released from Guantanamo to Albania); *see*

*also Almurbati v. Bush*, 366 F. Supp. 2d 72, 80 (D.D.C. 2005) (Walton, J.) (denying request for

advance notice of transfer and stating, "[O]nce the respondents release the petitioners from

United States custody . . . they will have obtained the result requested [through habeas] and at

that point there will be no further need for this Court to maintain jurisdiction."); *Al-Anazi v.*

*Bush*, 370 F. Supp. 2d 188, 198 (D.D.C. 2005) (Bates, J.) (denying request for advance notice of

transfer and stating, "Every habeas petition, including this one, is ultimately about obtaining

release from detention, and where, as here, the United States will relinquish custody of the

detainee to the home government there is nothing more the Court could provide to petitioners.")

(citation omitted).[11]   In petitioner Alladeen's case, the habeas petition seeks only declaratory and

---

[10] In prior submissions to the Court in various cases in connection with oppositions to motions for advance notice of transfer of detainees from Guantanamo, respondents have made clear that in all cases in which a Guantanamo detainee is transferred to the control of another government, the detainee is transferred entirely to the custody and control of the other government; once transferred, the individual is no longer in the custody or control of the United States.  *See* Declaration of then-Deputy Assistant Secretary of Defense for Detainee Affairs Matthew C. Waxman ¶ 5 (copy attached as Exhibit D).  (Although Mr. Waxman has left office, the policies and practices set forth in his prior declaration remain in effect and are applicable.) Thus, any detention of such an individual following his transfer from Guantanamo is by the foreign government pursuant to its own laws and not on behalf of the United States, *id.*, and cannot serve as a basis for preventing a habeas petition against respondents from becoming moot.  Indeed, repercussions flowing from independent acts by foreign sovereigns would not establish a case or controversy preventing mootness.  *See Greater Tampa Chamber of Commerce v. Goldschmidt*, 627 F.2d 258, 263 (D.C. Cir. 1980) (holding that a challenge against an executive agreement was not a justiciable case or controversy in part because redress of the plaintiffs' alleged injuries would depend on the independent response of the United Kingdom).

[11] The decision of the Court of Appeals in *Omar v. Harvey*, 479 F. 3d 1 (D.C. Cir. 2007), *pet. for reh'g filed*, is entirely distinguishable, as it concerned not only issues of the authority of

equitable relief aimed at petitioner's then-detention at Guantanamo by U.S. officials.  Such

claims are now moot.[12]  *See Qassim*, 466 F.3d at 1078 (equitable claims do not survive release

from incarceration).  Accordingly, petitioner Alladeen's case was appropriately dismissed.[13]

## CONCLUSION

For the reasons set forth above, the Court should deny petitioners' motions for

reconsideration and to "stay and abey."

Dated: April 26, 2007                           Respectfully submitted,

                                                PETER D. KEISLER
                                                Assistant Attorney General

                                                CARL NICHOLS
                                                Deputy Assistant Attorney General

                                                DOUGLAS N. LETTER
                                                Terrorism Litigation Counsel

                                                 /s/        Andrew I. Warden

---

a court prior to the transfer of a habeas petitioner out of custody to another sovereign country, but also a petitioner who was an American citizen with respect to whom the withdrawal of jurisdiction reflected in the MCA and *Boumediene* did not apply.

[12] *See also Scott v. Dist. of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998) ("Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison."); *Lesesne ex rel. B.F. v. Dist. of Columbia*, 447 F.3d 828, 832 (D.C. Cir. 2006) (rejecting view that a request for declaratory relief, accompanied by a "boilerplate request for 'any other relief the Court deems just,'" is "sufficient to forestall mootness").

[13] In several of these cases petitioners ask, as an alternative element of relief, that the cases be transferred to the Court of Appeals or that they be stayed for sixty days to allow for Court of Appeals proceedings under the DTA to proceed.  But the D.C. Circuit held in *Boumediene* that the conversion of the District Court cases involved in that appeal into Court of Appeals DTA cases was inappropriate, 476 F.3d at 994, and we explain above why there is no reason for any stay, including one for only sixty days, to be ordered here.

JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar 347518)
TERRY M. HENRY
JEAN LIN
JAMES J. SCHWARTZ
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN (IN Bar No. 23840-49)
EDWARD H. WHITE
NICHOLAS A. OLDHAM
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Rm. 7212
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents